**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | * Chapter 11 |
| | * |
| DMK PHARMACEUTICALS CORP., *et al.*,[1] | * Case No. 24-10153 (MFW) |
| | * (Jointly Administered) |
| | * |
| | * Hearing Date: July 17, 2024, 2:00 pm (ET) |
| Debtors. | * Objection Deadline: July 10, 2024, 4:00 pm (ET) |
| | * |

* * * * * * * * * * * * * *

## MOTION TO PERMIT INSURER TO ADVANCE CERTAIN DEFENSE EXPENSES

XL Specialty Insurance Company ("XL Specialty"), by its undersigned counsel, hereby moves for entry of an order granting relief from the automatic stay solely to the extent necessary to permit XL Specialty, which issued a management liability insurance policy to Debtor Adamis Pharmaceuticals Corporation ("Adamis"), to advance certain defense costs incurred, or that continue to be incurred, whether before or after the petition date of these Chapter 11 cases, by certain of Adamis's current and former directors and officers for the matters described more fully below. In support of this motion, XL Specialty respectfully states as follows:

### JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157 (b)(2).

---

[1] The Debtors in these Chapter 11 cases, along with the last four (4) digits of their federal tax identification numbers, are: (i) DMK Pharmaceuticals Corporation ("DMK") (9727) (ii) Adamis Corporation ("Adamis Corp.") (4912); (iii) Adamis Pharmaceuticals Corporation ("Adamis") (9663); (iv) Biosyn, Inc. ("Biosyn") (4982); (v) Rhombus Pharmaceuticals Corp. ("Rhombus") (6127); and (vi) US Compounding, Inc. ("USC") (7460) (collectively referred to as the "Debtors").

2. The statutory predicates for the relief requested herein are sections 105(a), 362(a), and 541 of the Bankruptcy Code.

3. Pursuant to this Court's April 10, 2024 Order Denying Debtors' Motion To Enforce The Automatic Stay, the Court retains "jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order."  Doc. No. 240.

## BACKGROUND AND FACTS

**A.     The Policy**

4. XL Specialty issued policy number ELU168450-20 (the "Policy") to Adamis for the claims-made Policy Period of June 28, 2020 to June 28, 2021.[2]  Policy, Declarations, Items 1 and 2.

5. A true and correct copy of the Policy is attached hereto as Exhibit A.

6. The Policy includes an Executive and Corporate Securities Liability Insurance Coverage Form (the "ECSL Coverage Part") with a $5 million Maximum Aggregate Limit of Liability for all Loss from all Claims, Investigation Demands, and Interviews (including Defense Costs).  *See id.*, Item 3(B).

7. A $1.5 million Retention applies to each Claim or Securities Claim under Insuring Agreements I(B), (C), or (E), and no Retention applies under Insuring Agreements I(A) or (D). *See id.*, Item 4.

8. The Policy contains the following relevant Insuring Agreements:

(A)     The Insurer shall pay on behalf of the **Insured Persons Loss** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** for a **Wrongful Act**, except for **Loss** which the **Company** is permitted or required to pay on behalf of the **Insured Persons** as indemnification.

---

[2] Unless otherwise defined herein, capitalized and boldface terms are defined in the Policy.

(B)      The Insurer shall pay on behalf of the **Company Loss** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** for a **Wrongful Act** to the extent the **Company** is required or permitted to pay on behalf of the **Insured Persons** as indemnification.

\*\*\*

(D)      The Insurer shall pay on behalf of the **Insured Persons Defense Expenses** resulting from an **Interview**, except for **Defense Expenses** which the **Company** is permitted or required to pay on behalf of the **Insured Persons** as indemnification.

(E)      The Insurer shall pay on behalf of the **Company Defense Expenses** incurred by the **Insured Persons** resulting from an **Interview** to the extent the **Company** is required or permitted to pay on behalf of the **Insured Persons** such **Defense Expenses**.

*Id.*, ECSL Coverage Part § I.

9.      The Policy defines a "Claim," in relevant part, to mean any investigation of an Insured Person commenced by a written statement from an Enforcement Authority, any subpoena served upon an Insured Person for testimony or documents in connection with a formal or informal investigation of the Company, and any civil proceeding commenced by service of a complaint. *See id.*, § II.(C).

10.      An "Interview" is defined as a "written request first received by an Insured Person during the Policy Period for an interview, meeting or sworn statement by . . . any Enforcement Authority. Policy § II(L), as amended by Endorsement No. 29. An Enforcement Authority includes "any federal . . . enforcement or governmental regulatory authority, including the United States Department of Justice." *Id.* § II(H).

11.      "Defense Expenses" are defined, in relevant part, as "reasonable legal fees, expenses and other costs . . . incurred in the investigation, adjustment, settlement, defense and/or appeal of any . . . Claim . . . or Interview." *Id.* § II(F), as amended by Endorsement No. 14.

3

12. "Insured Person" is defined to mean, in relevant part, "any past, present or future natural person director or officer" of Adamis. *Id.* § II(J)(1).

13. The Policy also contains a "Priority of Payments" provision that provides:

> In the event of **Loss**, including **Defense Expenses**, payable under more than one of the Insuring Agreements of the Policy, then the Insurer shall, to the maximum extent practicable and subject at all times to the Insurer's maximum aggregate Limit of Liability as set forth in ITEM 3 of the Declarations, pay such **Loss** as follows:
>
> (1) first, the Insurer shall pay that **Loss**, if any, which the Insurer may be liable to pay on behalf of the **Insured Persons** which the **Company** is not permitted nor required to pay on behalf of the **Insured Persons** as indemnification;
>
> (2) second, the Insurer shall pay that **Loss**, if any, which the Insurer may be liable to pay on behalf of the **Company** which the **Company** is permitted or required to pay on behalf of the **Insured Persons**; and
>
> (3) third, the Insurer shall make such other payments which the Insurer may be liable to make under Insuring Agreements (C) and/or (F) or otherwise.

*Id.* § VI.(L).

14. The Policy also includes a "Bankruptcy" provision that provides:

> Bankruptcy or insolvency of any **Insured** shall not relieve the Insurer of any of its obligations under this Policy. In such event, including any liquidation or reorganization proceeding of the **Company**, then each **Insured** and the Insurer hereby agree not to oppose or object to any efforts by any **Insured Person** to obtain relief from any stay or injunction.

*Id.* § VI.(M).

### B. The Government Investigations

15. In support of the Debtors' Chapter 11 Petitions and First Day Motions, the Debtors disclosed an investigation by the U.S. Department of Justice (the "DOJ Investigation"). *See* Doc 4, ¶¶ 30-32. "To date, the criminal wrongdoing alleged by the DOJ, and any penalties for it, remain unresolved." *Id.*, ¶ 32.

16. Further, a parallel investigation was commenced by the U.S. Securities and Exchange Commission and remains ongoing (the "SEC Investigation" and together with the DOJ

Investigation, the "Government Investigations"). *See* Doc. 42, ¶¶ 11, 13; Doc. 46-1, ¶¶ 12, 16; Doc. 137, ¶ 3.

17.     As part of the Government Investigations, certain of Adamis's directors and officers received interview requests and/or were served with grand jury subpoenas.

### C.     The Hammann Litigation

18.     Pre-petition, Jerald Hammann, an Adamis shareholder, filed suit in Delaware Chancery Court against Adamis and certain of its directors and offers seeking, among other things, to enjoin the company's annual meeting and alleging breaches of fiduciary duties (the "Hammann Litigation").

19.     Days after these jointly administered Chapter 11 cases were commenced, Hammann filed an appeal with the Delaware Supreme Court, seeking review of numerous interlocutory and final rulings from the Chancery Court against him and in the defendants' favor. The appeal remains pending.

20.     On March 26, 2024, the Debtors moved this Court for an order (i) enforcing the automatic stay as to the Hammann Litigation, (ii) holding that the Policy proceeds constitute property of the Debtors' bankruptcy estates subject to the automatic stay, and (iii) granting related relief. *See* Doc. No. 186.

21.     On April 10, 2024, the Court denied the Debtors' motion. *See* Doc. No. 240.

### D.     XL Specialty's Advancement of Defense Expenses Under the Policy

22.     Pre-petition, XL Specialty advanced $1,067,570.44 of Defense Expenses incurred by or on behalf of Insured Persons, including Adamis's current and former directors and officers, for the Hamman Litigation. *See* Doc. No. 186, ¶ 29.

5

23.     Pre-petition, XL Specialty also paid $500,000, the entirety of the sublimit for the Policy's books and records coverage in response to a demand from Mr. Hamman.  *See id.*, ¶ 28.

24.     XL Specialty has not advanced Defense Expenses incurred by or on behalf of such directors and officers for the Government Investigations.

25.     Instead, Adamis, pre-petition, paid defense costs within the $2.5 million Retention incurred by such directors and officers for the Government Investigations.  Under the Debtors' corporate organizational documents and bylaws, indemnification of directors and officers is required "to the fullest extent not prohibited by the DGCL or any other applicable law[.]"  Doc. No. 186, ¶ 25.  Thus, "the Debtor has an independent duty to provide indemnification, subject to certain limitations, under the Bylaws."  *Id.*, ¶ 26.

26.     Post-petition, the Debtors have not paid any defense costs incurred by or on behalf of the directors and officers for the Government Investigations or the Hamman Litigation, and XL Specialty has not advanced any defense costs.

## **RELIEF REQUESTED**

27.     By this Motion, XL Specialty seeks an order, substantially similar to the form submitted herewith as Exhibit B (the "Proposed Order"), granting XL Specialty relief from the automatic stay solely to the extent necessary for XL Specialty to advance covered Defense Expenses incurred or that continue to be incurred, whether before or after the petition date of these Chapter 11 cases, by or on behalf of Insured Persons for the Hammann Litigation and for the Government Investigations, in accordance with, and subject to, the Policy.

## ARGUMENT AND AUTHORITIES

### A. The Policy Proceeds are Not Property of the Estate

28. "Generally, when insurance policies provide direct coverage to directors and officers, the proceeds of the insurance policy are not property of the bankruptcy estate because the proceeds are payable to the directors and officers not the estate." *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 510 (Bankr. Del. 2004). "[W]hen the liability policy provides the debtor with indemnification coverage but indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not property of the bankruptcy estate." *Id.* at 512.

29. Here, indemnification of Insured Persons' Defense Expenses for the Hamman Litigation and Government Investigations has not occurred post-petition. Accordingly, the Policy proceeds covering Insured Persons' Defense Expenses are not property of the bankruptcy estate. *See In re Downey Fin. Corp.*, 428 B.R. 595, 611 (Bankr. Del. 2010) (holding that directors and officers liability policy proceeds were not property of the estate).

### B. Alternatively, Cause Exists to Lift the Automatic Stay

30. "Even if the proceeds from the D&O Policy were property of the bankruptcy estate, however, the automatic stay should be lifted." *Id.* at 513.

31. Under section 362(d)(1) of the Bankruptcy Code, "cause" exists to modify the automatic stay for the purpose of permitting XL Specialty to advance payments of reasonable and necessary defense costs incurred by or on behalf of Insured Persons, subject to XL Specialty's ongoing reservation of rights, for the Hamman Litigation and Government Investigations.

32. Section 362(d) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause . . . ." 11 U.S.C.

§ 362(d)(1). The Bankruptcy Code does not define the term "cause." *See In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997). "Because the term 'cause' is not defined in § 362(d) of the Bankruptcy Code, courts 'conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay.'" *In re Town Sports Int'l*, No. 20-12168 (CTG), 2023 U.S. Dist. LEXIS 227402, at *12 (D. Del. Dec. 21, 2023) (quoting *In re Trump Ent. Resorts, Inc.*, 526 B.R. 116, 120 (Bankr. D. Del. 2015)).

33.Courts in this federal circuit consider three factors when balancing competing interests of debtors and movants: "(1) whether any great prejudice to either the bankruptcy estate or the debtor will result from continuation of the civil suit; (2) whether the hardship to the nonbankruptcy party by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) the probability of the creditor prevailing on the merits." *In re W.R. Grace & Co.*, Nos. 01-01139 (JKF), 8582, 2007 Bankr. LEXIS 1214, at *8 (Bankr. D. Del. Apr. 13, 2007). "To establish cause, the party seeking relief from the stay must show that the balance of hardships from not obtaining relief tips significantly in [its] favor." *In re Am. Classic Voyages*, Co., 298 B.R. 222, 225 (D. Del. 2003) (internal quotations and citation omitted).

34.To the extent the stay applies to the Policy's proceeds, ample support exists for the Court to grant relief to permit XL Specialty to advance Defense Expenses incurred by or on behalf of Insured Persons, subject to XL Specialty's reservation of rights.

35.The Policy provides that XL Specialty will pay on behalf of Insured Persons (i) Defense Expenses resulting from an Interview, and (ii) Loss (defined to include Defense Expenses) resulting from a Claim (defined to include a subpoena for testimony or documents in connection with a formal or informal investigation of the Company) made against Insured Persons.

36. The Policy expressly addresses XL Specialty's obligations in light of the bankruptcy or insolvency of any Insured:

**BANKRUPTCY**

Bankruptcy or insolvency of any **Insured** shall not relieve the Insurer of any of its obligations under this Policy. In such event, including any liquidation or reorganization proceeding of the **Company**, then each **Insured** and the Insurer hereby agree not to oppose or object to any efforts by any **Insured Person** to obtain relief from any stay or injunction.

Policy, ECSL Coverage Part § VI.(M).

37. The Policy also prioritizes payment for Insured Persons over payment for the Debtors, making the Debtors' interest in the proceeds secondary to the Insured Persons' interests. The Policy provides that, in the event of a covered Loss, including Defense Expenses, payable under more than one Insuring Agreement, XL Specialty will pay Loss first on behalf of the Insured Persons which the Company is not permitted nor required to pay, second on behalf of Insured Persons which the Company is permitted or required to pay, and third on behalf of the Debtor under Insuring Agreements (C) and/or (F). *See id.*, § VI.(L).

38. Courts have recognized that where, as here, D&O liability policies include bankruptcy and/or priority of payment provisions similar to the Policy's provisions, the insurer may advance defense costs under such policies notwithstanding the existence of entity coverage. *See In re Downey Fin. Corp.,* 428 B.R. 595, 611 (Bankr. Del. 2010) (holding that even if D&O policy proceeds were property of the estate, cause existed to lift the automatic stay); *In re Beach First Nat'l Bancshares*, 451 B.R. 406, 410 (Bankr. S.C. 2011) (finding cause existed to grant relief from stay to allow directors and officers to receive payment of their defense costs); *see also In re Laminate Kingdom, LLC*, No. 07-10279-BKC-AJC, 2008 Bankr. LEXIS 1594, at *4 (Bankr. S.D. Fla. Mar. 13, 2008) ("[N]umerous courts have granted relief from the automatic stay to permit the

advancement of defense costs to a debtor's directors and officers – even though the insurance policies also provided direct coverage to debtor.").

39. Furthermore, courts have expressed reluctance to interfere with directors' and officers' contractual rights as they arise because "D&O policies are obtained for the protection of individual directors and officers . . . [and] [i]n essence and at its core, a D&O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection." *Ochs v. Lipson (In re First Central Fin. Corp.)*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999); *see also In re Youngstown Osteophathic Hosp. Ass'n*, 271 B.R. 544, 550 (Bankr. N.D. Ohio 2002).

40. Adamis purchased the Policy for the benefit of its directors and officers. The Policy expressly states that purpose and provides that coverage of the defense costs of directors and officers has priority over coverage of loss sustained by Adamis. Absent relief from the automatic stay, both the Insured Persons and the firms representing them in the Hamman Litigation and Government Investigations would be subtantially and irreparably harmed. *See In re LocatePlus Holdings Corp.*, No. 11-15791-NJF, 2011 Bankr. LEXIS 4206, at *8-9 (Bankr. D. Mass. Oct. 31, 2011); *see also In re Downey Fin. Corp.*, 428 B.R. at 610 (observing that the harm to the directors and officers from not lifting the stay was real and identifiable).

41. Accordingly, to the extent the Policy proceeds are property of Adamis's bankruptcy estate, cause exists to lift the automatic stay to permit XL Specialty to advance covered Defense Expenses incurred by or on behalf of the Insured Persons for the Hamman Litigation and Government Investigations.

**RESERVATION OF RIGHTS**

42. XL Specialty reserves all of its rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, or supplement this motion and to raise additional arguments in further briefing and at the hearing on this Motion.

**NOTICES AND NO PRIOR REQUEST**

43. Notice of this Motion is being provided to the following parties: (a) the Office of the United States Trustee for Region 3, serving the District of Delaware; (b) Counsel to the Official Committee of Unsecured Creditors; (c) the Debtors' twenty (20) largest unsecured creditors; (d) the Office of the United States Attorney for the Southern District of New York; (e) the Office of the United States Attorney for the District of Delaware; (f) the United States Securities and Exchange Commission; (g) the Internal Revenue Service; (h) NASDAQ, Inc.; (i) the United States Food and Drug Administration; (j) the parties and counsel of record, if applicable, to all parties in the Hammann Litigation; and (k) all parties who are entitled to receive notices in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002. In light of the nature of relief requested in this motion, XL Specialty respectfully submits that no further notice is necessary.

44. No prior motion for the relief requested herein has been made to this or any other court.

**CONCLUSION**

WHEREFORE, XL Specialty respectfully requests that the Court enter an Order declaring that XL Specialty may advance Defense Expenses incurred by or on behalf of Insured Persons for the Hamman Litigation and Government Investigations.

Dated: July 3, 2024 

Respectfully submitted,

/s/ *Carmella P. Keener*
Carmella P. Keener (DE #2810)
Cooch and Taylor, P.A.
1000 N. West Street, Suite 1500
Wilmington, DE 19801
T: 302-984-3800
ckeener@coochtaylor.com

*Counsel for XL Specialty Insurance Company*

and

Jason C. Reichlyn (*pro hac vice* pending)
Dykema Gossett PLLC
1301 K Street NW, Suite 1100 West
Washington, DC 20005
T: 202-906-8600
jreichlyn@dykema.com

*Of Counsel for XL Specialty Insurance Company*